BRIAN J. MILLER
MORRISON, SHERWOOD, WILSON & DEOLA PLLP
401 North Last Chance Gulch
P.O. Box 557
Helena, Montana 59624-0557
(406) 442-3261
(406) 443-7294 facsimile
bmiller@mswdlaw.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| MIRIAM ROJAS-ROSAS and JULIO LADISLAO SANTIAGO-ORTIZ.<br><br>       Plaintiffs,<br>    v.<br><br>UNITED STATES OF AMERICA, BY AND THROUGH U.S. CUSTOMS AND BORDER PROTECTION.<br><br>       Defendants. | CV-18-62-GF-BMM-JTJ<br><br>**PRELIMINARY PRETRIAL STATEMENT** |

COME NOW Plaintiffs Miriam Rojas-Rojas and Julio Ladislao Santiago-Ortiz and file the following Preliminary Pretrial Statement.

A. Brief Factual Outline of the Case

1

This case seeks to hold Customs and Border Protection ("CBP") civilly liable for its cruel and unlawful abuse of authority against the Plaintiffs, and send a clear message that the unlawful and tortious conduct on display in this case will not be tolerated in the District of Montana.

On April 12, 2016, Plaintiffs were driving in Choteau County, Montana, from California to their home in Glasgow, Montana, with two other occupants in the vehicle. At the time, both Plaintiffs (who are Mexican citizens) had lawful status to be present in the United States.  Ms. Rojas-Rojas was a deferred action for childhood arrivals ("DACA") recipient, and Mr. Santiago-Ortiz had a valid B1/B2 visitor's visa.  The Plaintiffs were engaged to be married and Ms. Rojas-Rojas was four months pregnant with their child.  There were two other occupants of the vehicle at the time, Jose Angel Oritz Marroquin (Mr. Santiago-Ortiz's uncle) and a friend of his named Alberto.  The truck they were driving belonged to Ms. Rojas-Rojas employer in Glasgow, Mr. Miguel Murillo-Jimenez.

Plaintiffs were pulled over on Hwy 87 in Choteau County by officers of the Montana Highway Patrol.  At the time, the Montana Highway Patrol was subject to a consent judgment, *Montana Immigrant Justice Alliance v. Montana Highway Patrol*, No. 13-CV-77 (D. Mont. 2014), which prohibited Montana Highway Patrol Officers from inquiring into the citizenship status of individuals pulled over during

traffic stops. The Highway Patrol likely violated the consent judgment when, during the stop, it asked the occupants to produce proof of their citizenship.

After citing the vehicle for a seatbelt violation, the Highway Patrol let the Plaintiffs go. However, Highway Patrol had already contacted CBP and provided them with the vehicle's license plate and information about the occupants. Once Highway Patrol let the Plaintiffs drive away, officers continued to follow the vehicle in order to keep track of it until CBP could arrive. CBP ultimately did show up and intercept Plaintiffs' vehicle.

CBP removed the other two passengers from the vehicle, and arrested them without questioning. Then CBP turned to the Plaintiffs. Ms. Rojas-Rojas presented her valid Employment Card, which was proof of her DACA status. CBP agents told her this documentation "didn't work." Mr. Santiago-Ortiz produced his Border Card (indicating his lawful admission as a B-2 visitor), as well as a valid I-94 arrival record. The CBP officer told Mr. Santiago-Ortiz these documents were "garbage."

CBP offices then seized the vehicle on the pretext that Mr. Santiago-Ortiz was a "smuggler." There was zero evidence supporting such a contention. However, CBP then released Mr. Santiago-Ortiz telling him that he was here legally, but detained Mr. Rojas-Rojas.

Ms. Rojas-Rojas was taken back to the CBP facility at Havre and interrogated throughout the day. Mr. Shahid Haque, acting as her counsel, eventually learned of her situation and contacted CPB at 9:50 pm on April 12, 2016 asking why she was being detained, and pointing out that she had valid DACA status. CBP never replied.

Meanwhile, Mr. Santiago-Ortiz had remained outside the CBP facility in Havre out of concern for his pregnant fiancée. CBP interrogated Mr. Santiago-Ortiz while in he waited in his vehicle. At some point, he entered the Havre facility at CBP's request for further interrogation and was released later that evening.

After Mr. Santiago-Ortiz was released, CBP decided to devise a cruel ruse to get Mr. Santiago-Ortiz to come to the Havre detention facility again. They told Mr. Santiago-Ortiz that Ms. Rojas-Rojas would soon be released and that he should come to pick her up. When he did, CBP agents walked him into the building asking him if he was ready to have dinner with her. At that time, he was handcuffed, booked and arrested.

CBP continued to interrogate him, lying to him about supposed "confessions" made by Ms. Rojas-Rojas and the other occupants of the vehicle that he had been "smuggling." Mr. Ortiz-Santiago continued to tell the truth, denying that he had engaged in any wrongful activity. When CBP's tactics weren't yielding fruit, they tried something different. CBP agents told Mr. Santiago-Ortiz that his pregnant

fiancée would be in jail for a long time, and would possibly have an abortion and lose her baby, or possibly have a baby in her cell without a doctor.  Needless to say, this tactic was purposefully done to cause Mr. Santiago-Ortiz emotional distress.

Mr. Haque resumed his contact with CBP in the morning of April 13, 2016. Mr. Haque spoke with Officer David Bischoff.  Mr. Bischoff was evasive and deceptive about the grounds for continuing to hold the Plaintiffs, but also informed Mr. Haque that they would be released.  Throughout the day, Mr. Haque continued communication with CBP and with the U.S. Attorney's Office.  Eventually, the U.S. Attorney's Office confirmed that there would be no prosecution in this case, and Immigration Customs and Enforcement confirmed that it would not take custody of Mr. Santiago-Ortiz.  But instead of being released immediately, CBP detained them until 6:30 pm on April 13, 2016.

Once released, in order to inflict more unnecessary inconvenience and pain on them, CBP seized the truck that the Plaintiff's had been driving.  CBP later demanded that the parties sign a release of liability in order to gain the release of the truck.  The parties refused to sign a release.  The truck was ultimately returned without a release after Mr. Haque engaged in further communications with CBP.

There was never any basis for CBP to detain either Ms. Rojas-Rojas or Mr. Santiago-Ortiz.  There was never any indication that they were involved in any

unlawful conduct. Both Plaintiffs had documentation showing their lawful status. Yet, CBP disregarded the law in their cruel and unlawful detention of the Plaintiffs. CBP's actions were intentional and designed to cause fear and distress in the Plaintiffs. CBP's actions were without any moral or legal justification. From the false imprisonment of the Plaintiffs, their treatment while in custody, and the seizure of the truck, the actions of CBP in this case were in disregard of the rule of law. CBP should admit to the illegality of its conduct, take remedial steps to address the allegations herein, and make good faith effort to compensate the Plaintiffs and ensure this type of action does not happen to anyone in the future.

As a result of this incident, the Plaintiffs have suffered on-going mental and emotional distress for which they seek compensation. But more fundamentally, they seek accountability. Accountability in this type of case comes in two ways: first, by a careful examination and public disclosure of the facts and circumstances of this situation; second, by providing just compensation to the victims of CBP's tortious conduct. In this way, the harm caused by CBP's unlawful conduct will be ameliorated, which is in the interests of a society that is founded on the rule of law.

B. Basis for Federal Jurisdiction and For Venue in the Division

This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. §§ 1331; 1343; and 1346. Venue properly lies within the District of Montana, and in the Great Falls division, because a substantial part of the events or omissions giving rise to this action occurred in and near Havre, Montana, within the Great Falls Division. See 28 U.S.C. § 1391(b)(2), (e); Local Rules 1.2(c) and 3.2(b).

On April 6, 2017, Plaintiffs submitted an administrative claim for the claim set forth below to Customs and Border Protection, part of the Department of Homeland Security. Six months having elapsed, all conditions precedent to filing a claim under the Federal Tort Claims Act have been met.

C. Factual Basis for Each Claim or Defense Advanced by the Plaintiff

1. False Imprisonment

Defendant's agents unlawfully detained the Plaintiffs against their will, without any legal basis to do so. The only plausible offense that Plaintiff had any connection to was a seatbelt violation under state law. Both Plaintiffs had the legal authority to be present in the United States and there was absolutely no basis to detain them. Defendant was well aware it had no legal basis to detain the Plaintiffs for any length of time.

2. Intentional Infliction of Emotional Distress

Defendant's agents cruelly and intentionally detained the Plaintiffs against their will, and engaged in acts of deception and intimidation against them with no

lawful purpose. The actions of Defendant's agents were not to enforce any laws, but to cause fear and distress in the Plaintiffs by the manner of their detention and the circumstances surrounding the detention.

3. Negligence

Defendant's agents owed the Plaintiffs a duty to recognize their lawful status and not illegally and unlawfully detain them and subject them to the humiliation, fear and distress occasioned by an illegal and unlawful detention, nor to subject them agent's acts, statements, and other conduct in connection with the Plaintiffs' detention.

D. Legal Theory Underlying Each Claim or Defense

1. False Imprisonment.

There are two components to this claim: restraint of individual against his will and the unlawfulness of the arrest. *Kichnet v. Butte-Silver Bow County*, 274 P.3d 740, 745 (Mont. 2012).

2. Intentional Infliction of Emotional Distress.

A claim for intentional infliction of emotional distress may be maintained when the Plaintiff shows that serious or severe emotional distress was the reasonably

foreseeable consequence of the defendant's intentional act or omissions. *Sacco v. High Country Independent Press*, 896 P.2d 411, 428 (Mont. 1995).

3. <u>Negligence</u>

Under Montana law, law enforcement officials owe a duty of care to a plaintiff directly injured by that individual's affirmative acts. *Bassett v. Lamantia*, 417 P.3d 299, 310 (Mont. 2018). The duty consists of using a degree of care that a normally prudent person would have used under the same circumstances. *Bassett*, 417 P.3d at 309.

<u>E. Computation of Damages</u>

Plaintiffs are seeking damages for emotional and mental distress. Montana law does not require a witness to express an opinion as to the amount of compensation for such claims. Plaintiffs at this time do not have a dollar amount that they are claiming for their suffering, but they do contend that damages in the amount $ 50,000 for each of them is not an unreasonable amount of compensation. Both Plaintiffs continue to be affected to this day by what happened to them on April 12 and 13, 2016.

<u>F. Pendency or Disposition of Any Related State or Federal Litigation</u>

None.

G. Proposed Additional Stipulations of Fact Not Included in the Statement of Stipulated Facts

    None.

H. Proposed Deadlines Relating to Joinder of Parties or Amendment of Pleadings

    The parties have agreed on August 31, 2018.

I. Identification of Controlling Issues of Law Suitable for Pretrial Disposition

    None.

J. The name and city and state of current residence of each individual known or believed to have information that may be used in proving or denying any party's claims or defenses, and a summary of that information.

1. Plaintiffs (may be contacted through counsel).  Plaintiffs have knowledge of the factual allegations of their arrest and detention as well as the statements made by CBP agents and the actions they engaged in.  Plaintiffs also have personal knowledge of their mental and emotional distress and damages and how Defendant's conduct has harmed them.

2. Shahid Haque (may be contacted through counsel).  Mr. Haque acted as counsel for the Plaintiffs and had direct communication with CBP, and other agents of the United States Government in connection with this matter, and as such is aware of their statements and conduct.  Mr. Haque was involved in securing the return of Mr. Ortiz Marroquin's vehicle from the United States.  Mr. Haque has knowledge of the immigration status of the Plaintiffs at the time of their detention, and can testify as to the basis for Rojas-Rojas status under the deferred action for childhood arrivals program.  Mr. Haque also has knowledge of immigration practices and procedures that may apply to this case, and may be disclosed as a hybrid expert witness at a later stage in these proceedings.

3. Officer David Bischoff. (address known to the Defendant). Officer Bischoff was involved in the detention of Plaintiffs by CBP, including the issuance of a Notice of Appear. Office Bischoff had communications on this topic with Mr. Haque, and presumably with other agents of the United States Government.

4. Other Agents of CBP and the United States Government. (identity and addressed known to Defendant). Other agents of the United States Government may have been involved in the detention of the Plaintiffs.

5. Trooper Lewis Johnson. (contact information unknown to Plaintiffs at this time). Trooper Johnson was the officer who stopped the Plaintiffs and communicated their presence to CBP and has knowledge of those events.

6. Sargeant Jason Wickum. Sgt. Wickum was involved in the stop of Plaintiffs with Trooper Johnson and presumably has knowledge of those events.

K. Substance of Any Insurance Agreement

Unknown by Plaintiff.

L. Status of Any Settlement Discussions and Prospects for Compromise of Case

No prior settlement discussions have occurred.

M. Suitability of Special Procedures

1. Plaintiff Santiago-Ortiz will require a translation services at trial and during any depositions.

RESPECTFULLY SUBMITTED this 11th day of July, 2018

By: /s/ Brian J. Miller

Brian J. Miller

MORRISON, SHERWOOD, WILSON, & DEOLA, PLLP

*Attorneys for Plaintiffs*