**CHAD C. SPRAKER**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**901 Front Street, Suite 1100**
**Helena, Montana 59626**
**Phone: (406) 457-5270**
**FAX: (406) 457-5130**
**Email: chad.spraker@usdoj.gov**

**VICTORIA L. FRANCIS**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**2601 Second Ave. North, Suite 3200**
**Billings, MT 59101**
**Phone: (406) 247-4633**
**FAX: (406) 657-6058**
**Email: victoria.francis@usdoj.gov**

**ATTORNEYS FOR DEFENDANT**
**United States of America**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| **MIRIAM ROJAS-ROSAS and JULIO LADISLAO SANTIAGO-ORTIZ,**<br><br>**Plaintiffs,**<br>vs.<br>**UNITED STATES OF AMERICA, by and through U.S. CUSTOMS AND BORDER PROTECTION,**<br><br>**Defendants.** | **CV 18-62-GF-BMM-JTJ**<br><br><br><br>**DEFENDANTS' PRELIMINARY PRETRIAL STATEMENT** |

1

Pursuant to the Court's Order of June 18, 2018 (Doc. 9) and L.R. 16.2(b)(1), the Defendant provides the following preliminary pretrial statement.

## A.     A brief factual outline of the case:

On April 12, 2016, a Montana Highway Patrol Trooper Lewis Johnson stopped a 2012 Ford truck for a traffic violation near Havre, Montana.  All four of the occupants were Mexican citizens, and three of the occupants, including the driver, Plaintiff Julio Ladislao Santiago-Ortiz, only had forms of identification issued by Mexico.  The fourth occupant, Plaintiff Miriam Rojas-Rosas, had an identification card issued by Montana.  None had a driver's license.  Records checks did not reveal any criminal history, though the dispatcher informed the trooper that one of the four occupants, Alberto Contreras-Varga, had a record indicating a prior illegal border crossing.  The trooper requested that dispatch pass that information on to the Havre Border Patrol Station. The trooper's sergeant—also on the scene—spoke with the passengers, during which time Rojas admitted that the two individuals in the back seat were unlawfully present in the United States. The troopers provided this information to radio dispatch and concluded the stop.

The dispatcher contacted Supervisory Border Patrol Agent David Line, who ran checks on the four individuals.  The check revealed that one occupant had been

removed only eleven days earlier, in Calexico, California, and there was no record of a subsequent lawful admission into the United States. Plaintiff Julio Santiago-Ortiz had a visitor's visa valid through May 12, 2016.

Line contacted Agents Thomas Nothhelfer and Bradley Kalk and provided them with the occupants' information along with the truck's license plate number, make, model and color. Nothhelfer and Kalk stopped and approached the truck on Highway 87. Agent Nothhelfer spoke first with the driver, Santiago, who produced his visitor's visa. Santiago stated that he entered the United States through the Port of San Yasidro, California on November 13, 2015, to visit his wife, Plaintiff Rojas. Rojas presented an employment authorization document but had no other immigration documents indicating she had the lawful right to be in or remain in the United States. Rojas claimed to be a recipient of Deferred Action for Childhood Arrivals (DACA).

Rojas and Santiago claimed that they were on their way to Glasgow after a trip to Helena, Montana, where they went to buy new tires and to shop. Agent Nothhelfer pointed out that the truck seemed new and the tires did not appear to need changing. The occupants then changed their story, claiming that they drove to Helena only for some quotes for new tires and not to actually buy any. Noting that there were no shopping bags in the truck, Agent Nothhelfer was suspicious of the

story and believed that the occupants may be involved in drug smuggling. He asked for and received consent to search the truck. Northhelfer ran a canine, which did not indicate or alert to any drug, nor did the search of the vehicle reveal any drugs. Agent Nothhelfer noted, however, that there was nothing in the backseat of the truck but the occupants, their backpacks, and some food. Agent Nothhelfer asked the passengers in the back seat, Alberto Conteras-Varga and Jose Angel Ortiz-Marroquin, whether they had any identification, at which point they both admitted that they did not have lawful status in the United States and explained that Rojas and Santiago had picked them up that day in West Covina, California. Contreras stated that Santiago was given $6500 by a person who worked at a restaurant in Glasgow, Montana, and this money was to be paid to the person who smuggled Contreras into the United States. Contreras explained that he was to pay off the debt by working as a dishwasher at the restaurant.

    Agent Nothhelfer told Ortiz, Contreras, and Rojas that he was going to transport them to the Havre Border Patrol station for further processing but advised Santiago that he was free to leave as he appeared to be lawfully present in the United States. Santiago followed the agents back to the station where he waited in the lobby. Once they arrived at the station, Agents Nothhelfer and Kalk began

4

preparing paperwork but turned over the remainder of the investigation to Agents Rigoberta Cepeda and Craig Gardner, and Patrol Agent in Charge McGoffin.

During the agents' questioning of the three individuals at the station, Ortiz explained that he is Santiago's uncle and that Santiago paid a coyote $5,000 to smuggle Ortiz into the United States near San Ysidro, California, on April 1, 2016. Rojas explained that she works for the restaurant, and her boss allowed her and Santiago to borrow his truck to drive to California to pick up Contreras and Ortiz. The truck was in fact registered to Rojas's boss, a Glasgow, Montana resident.

Contreras claimed that he was smuggled into the United States on April 9, 2016, and once he arrived in California, he received a phone call from an unknown person telling him that he was to receive a ride from California to Montana where he would be expected to work at a restaurant to pay off the debt he incurred as a result of the smuggling. During their questioning, the agents were advised of information that indicated to them that Santiago—whom they had released—may be a member of the Zeta cartel.

This new information led the Agents to believe that this scenario may be a smuggling scheme in which Santiago had taken part, designed to further Contreras and Ortiz's entry into the United States. As a result, the agents called Santiago, who had at that point left the station, and asked him to return. Once he arrived,

they arrested him, and read him his Miranda rights, after which he invoked his right to remain silent, declining to answer any questions without his attorney present.  Border Patrol released Santiago on his own recognizance after issuing a Notice to Appear for administrative immigration proceedings. Border Patrol released Rojas without issuing a Notice to Appear.

On April 18, 2017, CBP received administrative tort claims submitted by attorney Shahid Haque-Hausrath on behalf of the Plaintiffs.  They alleged that their restraint and interrogation was not based on reasonable suspicion or probable cause, but instead was intentionally and knowingly done to intimidate and cause them harm. The claimants alleged $500,000 in damages on account of suffering personal injury on theories of liability of intentional infliction of emotional distress, false imprisonment, and negligence.  On April 11, 2018, Plaintiffs filed a complaint in this Court under the Federal Tort Claims Act.

**B.     The basis for federal jurisdiction and for venue in the division:**

Federal jurisdiction is conferred pursuant to 28 U.S.C. § 1346(b)(1), as the United States has been named as a defendant in this civil tort action.  Since the alleged acts or omissions occurred near Havre, Montana, venue in the District of Montana is proper.  28 U.S.C. § 1402(b).  In addition, venue is proper in the Great Falls pursuant to L.R. 3.2(b)(1) & 1.2(c)(5).

**C.     The factual basis of each claim or defense advanced by the party**:

The Defendant's affirmative defense #3 is purely a legal defense, which will be discussed under Section D below.  The factual bases for the remaining defenses are as follow:

1.     <u>Failure to State a Claim (Defense #1)</u>:

The actions of U.S. Customs and Border Protection agents were authorized pursuant to their authority to interrogate, detain, and arrest an alien when an agent has reason to believe than an alien is entering or attempting to enter the United States in violation of law.  Here, Plaintiffs were detained under a reasonable belief of that they present in the United States unlawfully or engaged in the illegal smuggling or harboring of aliens.

2.     <u>Discretionary Function Exception to the Federal Tort Claims Act (Defense # 2)</u>:

Secretary of Homeland Security's June 12, 2012, memorandum regarding Deferred Action for Childhood Arrivals set forth criteria for an exercise of prosecutorial discretion with regard to individuals who came to the United States under the age of 16, among other factors.  The memorandum conferred no substantive right, immigration status, or pathway to citizenship and provided that the Department of Homeland Security cannot provide any assurance that relief will

be granted in all cases. DACA relief is grounded in acts that are discretionary by nature.

    3.    <u>Failure to Mitigate Damages (Defense # 4):</u>

Plaintiffs' claimed damages could have been mitigated through means available to Plaintiffs including compliance with existing immigration law.

    4.    <u>Lack of Standing (Defense #5)</u>

Plaintiffs lack constitutional and statutory standing to assert the rights of third parties to property seized by U.S. Customs and Border Protection, including the 2012 truck in which Plaintiffs were occupants.

    5.    <u>Third Parties for Which the United States Cannot Be Held Liable (Defense #6)</u>

Plaintiffs' allegations concerning the Montana Highway Patrol are attributable to nonfederal actors for which the United States cannot be held liable under the Federal Tort Claims Act.

**D.**     **The legal theory underlying each claim or defense, including, where necessary to a reasonable understanding of the claim or defense, citations to authority:**

    1.    <u>Failure to State a Claim (Defense # 1):</u>

Plaintiffs bring this action against the United States under the FTCA. The analysis of a claim under the FTCA is conducted under the substantive law of the

state where the accident occurred. *Mass. Bonding & Ins. Co. v. United States*, 352 U.S. 128-129 (1956).

False imprisonment has two elements: (1) the restraint of an individual against his will and (2) the unlawfulness of such restraint. *Hardy v. LaBelle's Distributing Co.*, 661 P.2d 35, 37 (Mont. 1983).

To prove negligence under Montana law, the plaintiff must establish four elements: (1) duty; (2) breach of duty; (3) causation; and (4) damages. *Wiley v. City of Glendive*, 900 P.2d 310, 312 (Mont. 1995).

Intentional infliction of emotional distress occurs when a plaintiff suffers serious and severe emotional distress as a reasonably foreseeable consequence of a defendant's intentional act or omission. *Czajkowski v. Meyers*, 172 P.3d 94, 101 (Mont. 2007).

2.      Discretionary Function Exception to the Federal Tort Claims Act (Defense # 2):

"Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not

the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exceptions covers acts that are discretionary, that is, any acts involving an element of judgment or choice. *United States v. Gaubert*, 499 U.S. 315, 322 (1991). The purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort . . . ." *Id.*

    3.    <u>Lack of Standing (Defense #5)</u>

To establish constitutional standing, a plaintiff must show (1) an injury in fact, (2) a casual connection between the injury and conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). Further a plaintiff's grievance must fall within the zone of interests protected by the statutory or constitutional provision invoked in the suit. *Bennett v. Spear*, 520 U.S. 154, 162 (1997).

    4.    <u>Third Parties for Which the United States Cannot Be Held Liable (Defense #6)</u>

The United States is liable only for the acts of federal employees within the scope of their employment. 28 U.S.C. § 1346(b)(1).

**E.**    **A computation of damages:**

Not applicable to the Defendant.

**F.    The pendency or disposition of any related state or federal litigation:**

None known.

**G.    Proposed additional stipulations of fact not included in the Statement of Stipulated Facts,** *see* **L.R. 16.2(b)(3), and the parties' understanding as to what law applies.**

Until the United States has an opportunity to engage in discovery, it is not prepared to enter into additional stipulations of law or fact, other than those set forth in the parties' L.R. 16.2(b)(3) statement.

**H.    Proposed deadlines relating to joinder of parties or amendment of the pleadings**:

In accordance with the parties' joint discovery plan, the United States proposes that the parties be permitted to amend their pleadings, as a matter of right, on or before August 3, 2018.  Thereafter, the parties may only amend with leave of the Court, pursuant to the Federal Rules of Civil Procedure.

**I.    Identification of controlling issues of law suitable for pretrial disposition:**

This case may be suitable for pretrial disposition under the discretionary function exception and Plaintiffs' failure to state a claim under the Federal Tort Claims Act.

**J.**     **The name and city and state of current residence of each individual known or believed to have information that may be used in proving or denying any party's claims or defenses, and a summary of that information. If known, the address and telephone number of the individual must be provided to all counsel on request:**

The following individuals may be contacted through the Montana Highway Patrol:

1. Montana Highway Patrol Trooper Lewis Johnson
   Trooper Johnson conducted the traffic stop involving Plaintiffs on April 12, 2016.

2. Montana Highway Patrol Sargent Jason Wickum
   Sargent Wickum was on the scene of the traffic stop involving Plaintiffs on April 12, 2016.

The following individuals may be contacted through the Havre Sector of the U.S. Customs and Border Protection:

3. Border Patrol Agent Thomas Nothhelfer III
   Northelfer participated in U.S. Customs and Border Protection's initial stop and investigation regarding Plaintiffs in April 2016.

4. Border Patrol Agent Bradley Kalk
   Kalk participated in U.S. Customs and Border Protection's initial stop and investigation regarding Plaintiffs in April 2016.

5. Border Patrol Agent Michael Messinger
   Messinger participated in U.S. Customs and Border Protection's investigation regarding Plaintiffs, including Santiago's advisement of rights.

6. Border Patrol Agent Neil Crawford
   Crawford participated in U.S. Customs and Border Protection's investigation regarding Plaintiffs, including Rojas-Rosas advisement of rights.

7. Supervisory Border Patrol Agent David Line
Line received information from Montana Highway Patrol dispatch concerning Plaintiffs after the traffic stop on April 12, 2016. Line also relayed information regarding Plaintiffs to Agents Northhelfer and Kalk.

8. Supervisory Border Patrol Agent David Bischoff
Bischoff was an examining officer in relation to U.S. Customs and Border Protection's investigation regarding Plaintiffs.

9. Operations Officer Rigoberta Cepeda
Cepeda assisted with U.S. Customs and Border Protection's investigation regarding Plaintiffs.

10. Operations Officer Craig Gardner
Gardner assisted with U.S. Customs and Border Protection's investigation regarding Plaintiffs. He also assisted with the seizure and return of the 2012 Ford Truck in which Plaintiffs were traveling.

11. Patrol Agent in Charge Perla S. McGoffin
McGoffin was a supervisor at the time of U.S. Customs and Border Protection's investigation regarding Plaintiffs in April 2016.

Any other persons identified during depositions or by the parties during the course of litigation.

**K.    The substance of any insurance agreement that may cover any resulting judgment:**

There is no applicable insurance agreement.

**L.    The status of any settlement discussions and the prospects for compromise of the case:**

The parties have not engaged in any settlement discussions. The prospects

for settlement of the case are unknown until the parties have engaged in discovery.

## M.     Suitability of Special Procedures:

It is submitted that this case is not appropriate for special procedures.

**DATED** this 11th day of July, 2018.

                                         KURT G. ALME
                                         United States Attorney

                                         */s/ Chad C. Spraker*
                                         Assistant U. S. Attorney
                                         Attorney for Defendant

## **CERTIFICATE OF SERVICE**

     I hereby certify that on the 11th day of July, 2018, a copy of the foregoing document was served on the following person by the following means.

   <u>1-2</u>  CM/ECF
   <u>    </u>  Hand Delivery
   <u>    </u>  U.S. Mail
   <u>    </u>  Overnight Delivery Service
   <u>    </u>  Fax
   <u>    </u>  E-Mail

| | |
|---|---|
| 1. Clerk of Court | 2. Brian J. Miller<br>MORRISON, SHERWOOD, WILSON & DEOLA, PLLP<br>41 N. Last Chance Gulch<br>P.O. Box 557<br>Helena, Montana 59624<br>(406) 442-3261 – phone<br>(406) 443-7794 – fax<br>bmiller@mswdlaw.com<br>***Attorney for Plaintiffs*** |

                                              */s/ Chad C. Spraker*
                                              Assistant U. S. Attorney
                                              Attorney for Defendant